IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GREGORY H. WITTKAMPER,**
as Administrator of the
Estate of Stephen Michael
Wittkamper,

      **Plaintiff,**

  v.                                       CIVIL NO. 3:23-CV-177
                                               (KLEEH)
**JEFFERSON COUNTY SHERIFF'S DEPARTMENT,**
**SHERIFF THOMAS H. HANSEN,**
**DEPUTY K.J. STIPANOVIC,**
**DEPUTY C. ELLIS,**
**DEPUTY R. JENKINS, and**
**DEPUTY T. STEPLY,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS [ECF NO. 4]**

Pending before the Court is a motion to dismiss. For the reasons discussed herein, the motion is **GRANTED IN PART** and **DENIED IN PART**.

      **I.**      **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Gregory H. Wittkamper ("Plaintiff"), as administrator of the Estate of Stephen Michael Wittkamper, brings this suit against the Jefferson County Sheriff's Department (the "Sheriff's Department"), Sheriff Thomas H. Hansen ("Sheriff Hansen"), Deputy K.J. Stipanovic ("Deputy Stipanovic"), Deputy C. Ellis ("Deputy Ellis"), Deputy R. Jenkins ("Deputy Jenkins"), and Deputy T. Steply ("Deputy Steply"). Plaintiff brings the following

causes of action relating to the death of Stephen Wittkamper: Tort of Outrage and Intentional Infliction of Emotional Distress (Count One); Deliberate Indifference Under 42 U.S.C. § 1983 (Count Two); Battery (Count Three); Negligent Retention and Hiring (Count Four); and Wrongful Death (Count Five).

The case was originally filed in the Circuit Court of Jefferson County, West Virginia, Case Number 23-C-77. On July 20, 2023, it was removed to the Northern District of West Virginia and assigned to the Honorable Gina M. Groh, United States District Judge, at the Martinsburg point of holding court. On July 24, 2023, the case was transferred to the undersigned District Judge. On July 27, 2023, a motion to dismiss was filed by the Sheriff's Department, Sheriff Hansen, Deputy Stipanovic, and Deputy Jenkins [ECF No. 4]. The motion is fully briefed and ripe for review. Deputy Ellis and Deputy Steply filed a motion for joinder in the motion to dismiss [ECF No. 12]. For good cause, the motion for joinder is **GRANTED.**

## II.  FACTS

For purposes of analyzing the motion to dismiss, the Court assumes the following facts, taken from the Complaint, are true. The decedent, Stephen Michael Wittkamper ("Mr. Wittkamper"), had been living with William "Bill" Cummings and his wife Barbara Cummings for approximately seven or eight years. Compl., ECF No.

1-1, at ¶ 7. On April 24, 2021, Bill Cummings called 911 and reported that there was an "event," also described in the Complaint as a "conflict,"[1] involving his wife and Mr. Wittkamper. Id. ¶¶ 1, 6, 7. Bill Cummings was awakened by the incident and asked Mr. Wittkamper to leave. Id. ¶ 7.

Mr. Wittkamper went downstairs to the area of the home where he was living, and shortly thereafter, Deputies Stipanovic, Ellis, Jenkins, and Steply arrived. Id. ¶¶ 6, 7. The Deputies understood that Mr. Wittkamper was experiencing a "mental health issue." Id. ¶ 7. Mr. Wittkamper reported to them that he "didn't feel well and thought he was on a 'trip.'" Id. Mr. and Mrs. Cummings advised the Deputies that the behavior was unusual for Mr. Wittkamper and that he never used drugs or alcohol or displayed any violent tendencies. Id. Mr. Wittkamper was having a "temporary mental health issue." Id.

The Deputies did not evaluate Mr. Wittkamper's mental health issues. Id. ¶ 8. Instead, they approached Mr. Wittkamper aggressively, in a manner specifically calculated to create and/or increase risk to the officers and Mr. Wittkamper. Id. It was immediately clear to the Deputies that Mr. Wittkamper was "extremely obese" and "not in a physical condition where he posed

---

[1] Plaintiff's Response states that Mr. Wittkamper hit Mrs. Cummings. See Response, ECF No. 8, at 1.

any realistic threat" to them. Id. ¶ 9. Nor could Mr. Wittkamper comply, due to his obesity, with the Deputies' orders to place his hands behind his back. Id. Further, Mr. Wittkamper had just woken from sleep, was nude, and was unarmed. Id. He did not resist arrest. Id. ¶ 28.

The Deputies proceeded to incapacitate Mr. Wittkamper by shooting him in the back with a taser. Id. ¶ 10. They also forced his arms behind him, causing him pain, suffering, and injuries. Id. ¶ 11. After placing handcuffs on Mr. Wittkamper, they left him lying face down on the floor. Id. This placed Mr. Wittkamper in physical distress due to his obesity. Id. His protuberant abdomen prevented him from breathing while his hands were cuffed and the Deputies were holding him down. Id. The Deputies refused to rotate him into a position where he could breathe until it was too late to recover from the distress. Id. Mr. Wittkamper had a cardiac event, resulting in his death. Id.

### III. STANDARD OF REVIEW

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89,

94 (2007)).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. MA.R.T.in, 980 F.2d 942, 952 (4th Cir. 1992).  Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

### IV. DISCUSSION

**A.  Dismissal of the Sheriff's Department**

The parties agree that the Sheriff's Department is not a proper party to the suit.  Therefore, the motion to dismiss is **GRANTED** in this respect, and the Sheriff's Department is **DISMISSED** from the Complaint.  The Court will not consider Defendants'

alternative and additional arguments to dismiss claims against the Sheriff's Department.

**B.   Immunity from State Law Causes of Action for the Individual Defendants (III.C)**

In section III.C of the motion, Defendants ask the Court to dismiss the state law causes of action against the individual defendants because they are immune from suit under the West Virginia Governmental Tort Claims and Insurance Reform Act (the "Act"). Plaintiff argues that Defendants' interpretation of the Act is incorrect and that the Deputies are not immune because their acts could be considered malicious, in bad faith, wanton, or reckless.

Under West Virginia law, employees of a political subdivision generally are immune from liability <u>unless</u> one of the following applies:

> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5(b). The Supreme Court of Appeals of West Virginia has held that in the context of this statute, the terms "willful," "wanton," and "reckless" mean that

6

> the actor has *intentionally* done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a *conscious* indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable.

Holsten v. Massey, 490 S.E.2d 864, 877 (W. Va. 1997).

The Court finds that the Complaint alleges facts that could support a finding that the Deputies' actions were malicious, in bad faith, wanton, or reckless. According to the Complaint, Mr. Wittkamper was naked, unarmed, "extremely obese," and undergoing a "mental health issue." He was not resisting arrest. The Deputies tased him in the back, handcuffed him, and held him face down on the floor on his protuberant stomach. They continued to hold him in that position despite his being unable to breathe. Moreover, Plaintiff alleges claims for battery (Count III) and excessive force (Count II) which, when accompanied by plausible factual support, fall "manifestly outside the scope of [a law enforcement officer's] employment." The Deputies are not, therefore, immune under section 29-12A-5(b). The motion to dismiss is **DENIED** in this respect. With respect to Sheriff Hansen, however, Plaintiff has not pled sufficient facts indicating that he falls within one of the exceptions under section 29-12A-5(b).

Plaintiff does not allege a specific fact outside conclusory elements of the purported claims against Sheriff Hansen. The plausibility standard requires more than these legal conclusions. See Iqbal, 556 U.S. at 678. As such, Sheriff Hansen is **DISMISSED** from the state law causes of action (Counts One, Three, Four, Five).

### C. Punitive Damages Against the Individual Defendants for State Law Causes of Action (III.F)

In section III.F of the motion, Defendants argue that punitive damages may not be recovered against any of the individual defendants for the state law claims (Counts One, Three, Four, and Five).

Under West Virginia law, when an employee of a political subdivision is sued in his official capacity, punitive damages may not be asserted against that employee. See Huggins v. City of Westover Sanitary Sewer Bd., 712 S.E.2d 482, 487-88 (W. Va. 2011). Punitive damages, however, may be assessed against political subdivision employees in their individual capacities. See id. (noting that if the mayor was sued in his individual capacity, punitive damages would be allowed, if warranted). In Huggins, the Supreme Court of Appeals of West Virginia could not find any language in the Complaint indicating that the mayor was sued in his individual capacity, so it found that punitive damages were

not recoverable. Id.

Here, in the Complaint, Plaintiff alleges that the Deputies are "individually liable due to their personal involvement." Compl., ECF No. 1-1, at ¶ 26. Although these assertions are included under the header for Count Two (the Section 1983 claim), not the state law claims, the Court still finds it reasonable to read the full Complaint, including the allegations of intentional misconduct placing the Deputies outside the scope of their job duties, as asserting claims against the Deputies in their individual capacities. As such, the Court **GRANTS** this portion of the motion in part, finding that Plaintiff cannot recover punitive damages against the individual defendants in their official capacities. It **DENIES** this portion of the motion in part, finding that Plaintiff may recover punitive damages against the individual defendants in their individual capacities.

D.  **Qualified Immunity for the Deputy Defendants for the § 1983 Claim (Count Two) (III.G)**

In section III.G of the motion, Defendants argue that the Deputies are entitled to qualified immunity because the allegations arise from discretionary acts done in the performance of their official duties. They further argue that Plaintiff failed to sufficiently plead how the Deputies' alleged force, use of handcuffs, and use of a taser clearly violated Mr. Wittkamper's

rights when they are clearly within the officers' discretionary duties. Plaintiff argues that he has sufficiently pled that the Deputies violated clearly established rights and are not entitled to qualified immunity.

Qualified immunity can be afforded to government officials for discretionary acts taken in their official capacity. The protection extends to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Qualified immunity protects those police officers who could reasonably believe that their actions were lawful, in light of clearly established law at the time of the action. Pegg v. Herrnberger, 845 F.3d 112, 117 (4th Cir. 2017).

The test to determine whether an officer is entitled to qualified immunity is two-fold: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right, and (2) whether that right was clearly established such that a reasonable person would have known. Siegert v. Gilley, 500 U.S. 226, 232 (1991). The Court can address either prong first. Pearson v. Callahan, 129 S.Ct. 808 (2009). "For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Safar v. Tingle, 859 F.3d 241, 246 (4th Cir. 2017) (citation and internal

quotations omitted).

In Plaintiff's response, he cites "[e]xcessive force used in an arrest" as a Constitutional violation that took place. He argues that the Fourth Circuit has found that "[d]eploying a taser is a serious use of force" that is designed to "inflict[] a painful and frightening blow." See Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 902 (4th Cir. 2016) (citations omitted). He does not, however, cite any specific authority indicating that such a painful and frightening use of force was unlawful here.

"[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Tennessee v. Garner, 471 U.S. 1, 7 (1985). The Fourth Circuit has recognized that

> the determination whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made on the basis of information actually possessed by the officer at the critical time, or that was then reasonably available to him, and in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions.

Pritchett v. Alford, 973 F.2d 307, 312-13 (4th Cir. 1992) (internal citations omitted). Under the Fourth Amendment's "reasonableness" analysis, force is not excessive if it is objectively reasonable

under the circumstances facing the officer, without regard to his underlying intent. Graham v. Connor, 490 U.S. 386, 397 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396–97.

In the Complaint, Plaintiff alleges that Mr. Wittkamper was naked, "extremely obese" with a "protuberant abdomen," unarmed, "not in a physical condition where he posed any realistic threat to the officers," and experiencing a "mental health issue." Assuming that Plaintiff's allegations are true at this stage, it would be possible for a jury to find that tasing Mr. Wittkamper in the back under these circumstances was unreasonable and, therefore, excessive. Assuming the factual allegations to be true, Mr. Wittkamper was not posing an immediate threat to the safety of officers or others and was not actively resisting arrest or attempting to evade arrest by flight.² For these reasons, and at

---

² In their reply, Defendants argue that the decedent had been accused of a very recent assault and battery and "therefore show[ed] a propensity for violence at the present time." Reply, ECF No. 9, at 7. They also argue that "with the decedent currently in the same residence as the Cummings [sic], and being a larger individual, Mr. Wittkamper posed an immediate threat to both the Cummings [sic] and the deputies at the scene." Id. Finally, Defendants argue that Mr. Wittkamper was not complying with lawful

this stage of litigation, Defendants' motion to dismiss is **DENIED** to the extent that it argues that the Deputies are entitled to qualified immunity for Count Two.

### E. Section 1983 Claim Against Sheriff Hansen (III.H)

In section III.H of the motion, Defendants argue that Count Two of the Complaint should be dismissed against Sheriff Hansen. In Count Two, Plaintiff asserts a claim of Deliberate Indifference under 42 U.S.C. § 1983. Plaintiff alleges that the Deputies, in using unreasonable force, acted pursuant to a policy or custom of the Sheriff's Department. He asserts that the Sheriff's Department failed to adopt clear policies and failed to properly train its officers. In their motion, Defendants argue that Count Two should be dismissed against Sheriff Hansen because the Complaint fails to state what policy or custom of the Sheriff's Department the Deputies allegedly acted upon or how the Sheriff's Department

---

orders. <u>Id.</u> The Court finds that these asserted facts do not trigger application of qualified immunity. The assessment of whether a suspect is a threat is made at the moment when force is used. <u>See</u> <u>Elliott v. Leavitt</u>, 99 F.3d 640, 643 (4th Cir. 1996); <u>see also</u> <u>Waterman v. Batton</u>, 393 F.3d 471, 481 (4th Cir. 2005) (stating that "events should be reviewed outside the context of the conduct that precipitated the seizure"). In addition, neither his large size nor his presence in the home establish that he was a threat in the moment when force was used. Finally, Plaintiff has pled that Mr. Wittkamper was not complying with lawful orders because he was too obese to put his hands behind his back as instructed. Assuming Plaintiff's facts are true at this stage, Mr. Wittkamper was not posing a threat, and a jury could find that the use of force deployed was unreasonable.

failed to train its deputies. They argue that the Complaint relies only on conclusory statements. Plaintiff argues that these allegations are sufficient to survive a motion to dismiss.

Under certain circumstances, a plaintiff may sue a supervisory official for constitutional injuries inflicted by his subordinates. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citation omitted). "[L]iability is premised not upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Id. (citing Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984)). The Fourth Circuit has established three elements necessary to establish supervisory liability under Section 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Id.

Here, Plaintiff has not pled any facts indicating that the alleged misconduct was widespread or even used on several different occasions. As such, to the extent that Count Two alleges a Section 1983 claim against Sheriff Hansen, it is **DISMISSED**. This portion of the motion to dismiss is **GRANTED**.

F. **Battery (III.I)**

In section III.I of the motion, Defendants argue that Count Three (Battery) should be dismissed against all Defendants because Plaintiff did not plead sufficient facts. Defendants also generally assert, without describing how it would apply here, that it is possible for privilege to apply. Plaintiff argues that the battery claim has been sufficiently pled, citing the Complaint's allegations that the Deputies tased Mr. Wittkamper and held him down in a manner in which he could not breathe. Plaintiff states that there is no evidence at this stage showing Defendants' privilege to do so without consent.

In West Virginia,

> An actor is subject to liability to another

> for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

W. Va. Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 51, 602 S.E.2d 483, 494 (2004), *overruled on other grounds*, Courtney v. Courtney, 437 S.E.2d 436 (W. Va. 1993)). Defendants are correct that "[a]n activity that would otherwise subject a person to liability in tort for battery . . . does not constitute tortious conduct if the actor is privileged to engage in such conduct." Hutchinson v. W. Va. State Police, 731 F. Supp. 2d 521, 547 (S.D.W. Va. 2010).

Taking the allegations in the Complaint as true at this stage, the Deputies arrived at the home, tased Mr. Wittkamper in the back, and held him down so that he could not breathe. The Court finds that a claim of battery against the Deputies is sufficiently pled. Defendants have not specified in their motion which privilege supposedly applies, aside from the immunity arguments in other areas of the brief. At this stage, given the allegations and the lack of specificity in Defendants' motion, this portion of the motion to dismiss is **DENIED** with respect to the Deputies.

The Court finds, however, that the battery claim against Sheriff Hansen must be dismissed because there is no allegation in the Complaint that Sheriff Hansen arrived at the home, much less

took part in the tasing and holding down of Mr. Wittkamper. Count Three, therefore, is additionally **DISMISSED** against Sheriff Hansen for this reason.

**G.   Outrageous Conduct (III.J)**

In section III.J of the motion, Defendants argue that the intentional infliction of emotional distress claim should be dismissed because it is insufficiently pled. Count One asserts that all Defendants are liable for intentional infliction of emotional distress (also known as the tort of outrage). Defendants argue that Plaintiff has failed to sufficiently plead facts supporting the claim. Plaintiff argues in response that the "overall combination of facts alleged where the decedent was tased to death and/or suffocated to death can support such a conclusion." Response, ECF No. 8, at 14. Neither party cites any legal authority to support its position.

A plaintiff must establish the following elements to prevail on a claim of intentional infliction of emotional distress:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff

was so severe that no reasonable person could be expected to endure it. Syl. Pt. 3, Travis v. Alcon Lab'ys, Inc., 504 S.E.2d 419 (W. Va. 1998). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Harless v. First Nat. Bank in Fairmont, 289 S.E.2d 692, 705 (W. Va. 1982).

Here, the Court finds that Plaintiff has sufficiently pled a claim of Intentional Infliction of Emotional Distress. The Complaint alleges that Mr. Wittkamper was naked, unarmed, "extremely obese," and undergoing a "mental health issue." He was not resisting arrest. The Deputies tased him in the back, handcuffed him, and held him face down on the floor on his protuberant stomach. They continued to hold him in that position despite his being unable to breathe. The jury could find that these actions go beyond all possible bounds of decency and are atrocious and utterly intolerable. The motion to dismiss is **DENIED** with respect to Count One.

## V. CONCLUSION

For the reasons discussed, the Court **ORDERS** the following:

- The motion for joinder is **GRANTED** [ECF No. 12]; and

- The motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** [ECF No. 4], as set forth above.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: February 26, 2024

*/s/ Tom S. Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA