IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GREGORY H. WITTKAMPER,
as Administrator of the Estate
of Stephen Michael Wittkamper,

      Plaintiff,

  v.                                       CIVIL NO. 3:23-CV-177
                                             (KLEEH)

DEPUTY K.J. STIPANOVIC,
DEPUTY C. ELLIS,
DEPUTY R. JENKINS, and
DEPUTY T. STELY,

      Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING
### MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]

Pending before the Court is a motion for summary judgment. For the reasons discussed herein, the motion is **GRANTED**.

### I.   INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Gregory H. Wittkamper ("Plaintiff"), as administrator of the Estate of Stephen Michael Wittkamper ("Wittkamper"), filed a complaint on April 20, 2023, in the Circuit Court of Jefferson County, West Virginia, against the Jefferson County Sheriff's Department, Sheriff Thomas H. Hansen, Deputy K.J. Stipanovic, Deputy C. Ellis, Deputy R. Jenkins, and Deputy T. Stely. See ECF No. 1-1. The Defendants removed the case to this Court on July 20, 2023. See ECF No. 1.

WITTKAMPER V. STIPANOVIC ET AL.                              3:23-CV-177

## MEMORANDUM OPINION AND ORDER GRANTING
## MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]

On February 26, 2024, the Court granted in part and denied in part a motion to dismiss. See ECF No. 18. As a result, certain claims, including all claims against the Sheriff's Department and Sheriff Hansen, were dismissed. Against the remaining Defendants, Plaintiff now asserts the following: outrage or intentional infliction of emotional distress, deliberate indifference, excessive force, battery, bystander liability, and wrongful death.

On December 1, 2025, the remaining Defendants, Deputy K.J. Stipanovic ("Stipanovic"), Deputy T. Stely ("Stely"), Deputy R. Jenkins ("Jenkins"), and Deputy C. Ellis ("Ellis") (together, "Defendants") filed a motion for summary judgment. See ECF No. 80. In it, Defendants seek dismissal of all remaining claims, arguing that they are entitled to qualified immunity for the federal claims and that the other claims fail as a matter of law. The motion is fully briefed and ripe for review. See ECF Nos. 91, 95.

## II.   UNDISPUTED FACTS

William "Bill" Cummings ("Mr. Cummings"), age 86, and his wife Barbara Cummings ("Mrs. Cummings"), age 82, lived in Charles Town, West Virginia, and had allowed Wittkamper to live in their basement for over eight years. Cummings Dep., ECF No. 80-2, at 9:2-5; 13:13-19; 21:2-5. The evening of April 24, 2021, Mr. Cummings woke to his wife screaming and went to her office. Id.

WITTKAMPER V. STIPANOVIC ET AL.                    3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

at 15:12-18.  Wittkamper, who weighed approximately 400 pounds, was standing near the desk, and Mrs. Cummings, who weighed approximately 135 pounds, was on the floor.  Id. at 15:19-24; 21:2-5; 42:2-9.  Mrs. Cummings told Mr. Cummings that Wittkamper had "slugged" her and knocked her off her chair.  Id. at 16:1-5.  Wittkamper was completely naked.  Id. at 15:12-14.  He was "not belligerent" but was also "not communicative."  Id. at 15:6-7.  Mr. Cummings asked Wittkamper to follow him.  Id. at 16:8-19.  Wittkamper followed Mr. Cummings into the garage, and Mr. Cummings closed the house door behind him.  Id.  Mr. Cummings called 911 and reported that Wittkamper, who was "high," had punched his wife in the face.  See Sealed Exh. 2 to Motion.  Wittkamper then used a key to re-enter the house.  Cummings Dep., ECF No. 80-2, at 16:20-17:6.  Mr. Cummings told Wittkamper to go to the basement, and he did.  Id. at 17:3-8.  Defendants responded to the call.

Ellis and Jenkins arrived first, followed by Stipanovic and Stely.  See Stely Dep., ECF No. 80-14, at 58:5-12.  Defendants entered the basement and observed that Wittkamper was not exhibiting normal behavior and was possibly impaired.  Id. at 62:1-6; Jenkins Dep., ECF No. 80-13, at 53:6-11.  During the encounter, Ellis, Jenkins, and Stely each deployed and hit Wittkamper with one taser shot.  Before firing his taser, Jenkins repeatedly told Wittkamper to "back up" and "turn around," but Wittkamper then

3

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

charged at Jenkins. See Ellis and Jenkins Body Cameras, Sealed Exhs. 11 and 12 to Motion. Jenkins deployed his taser to Wittkamper's chest. Id. Wittkamper remained standing after being hit with the taser. Id. He pulled the prong out of his chest and said, "Off." Id. Jenkins and Ellis repeatedly told Wittkamper to "get on the ground," but he did not. Id. Wittkamper walked away from the officers momentarily. Id. He then proceeded to walk toward Ellis, and Ellis deployed his taser to Wittkamper's chest. Id. Wittkamper remained standing and pulled out Ellis's taser prong as well. Id. Ellis and Jenkins continued to tell him to "get on the ground," but he did not. Id. Wittkamper continued to walk toward Ellis, and Stely then deployed his taser to Wittkamper's right shoulder from behind. Id. After being shot with three tasers, Wittkamper continued to refuse to get on the ground. Id. At that point, Defendants went "hands on" with him to take him to the ground. Id. They placed Wittkamper in the prone position (on his stomach) and, due to his size, worked to place two sets of handcuffs on him. Id.

Approximately 45 seconds after placing Wittkamper in the prone position, Defendants completed placement of the handcuffs. Id. Wittkamper was moving his legs. Id. Jenkins and Stely each had a hand on his back. Jenkins Dep., ECF No. 80-13, at 31:16-18; Ellis Dep., ECF No. 80-12, at 55:13-18. Ellis and Stipanovic

WITTKAMPER V. STIPANOVIC ET AL.                    3:23-CV-177

### MEMORANDUM OPINION AND ORDER GRANTING
### MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]

each held down one of Wittkamper's legs.  Jenkins Dep., ECF No. 80-13, at 36:11-14.  Wittkamper continued to wiggle and move for a period of time.  See Ellis and Jenkins Body Cameras, Sealed Exhs. 11 and 12 to Motion.  He then became still for approximately 30 seconds.  Id.  After he had been still for approximately 30 seconds, which was approximately two minutes after the handcuffs were placed, Defendants noticed that Wittkamper had become unresponsive and begun agonal breathing, so Defendants rolled him on his side into the recovery position.  Id.; Jenkins Dep., ECF No. 80-13, at 84:19-22, 130:1-8; Stely Dep., ECF No. 80-14, at 71:20-24.  Defendants checked his pulse at least once.  Ellis Dep., ECF No. 80-12, at 88:23-89:1-4; Stely Dep., ECF No. 80-14, at 77:17-22; Stipanovic Dep., ECF No. 80-15, at 62:17-20.  They performed two sternum rubs, to which Wittkamper did not respond.[1]  Stely Dep., ECF No. 80-14, at 94:20-22; Jenkins Dep., ECF No. 80-13, at 129:3-9.  Wittkamper still had a pulse, and the officers did not perform CPR.  Jenkins Dep., ECF No. 80-13, at 86:1-3.  The handcuffs remained on Wittkamper until EMS arrived.  Id. at 82:6-7.  EMS had already been called, but when Defendants rolled Wittkamper onto his side, Defendants radioed EMS to expedite.  See

---

[1] The goal of a sternum rub is to elicit a response, indicating that a suspect is conscious or feels the pressure being applied.  Ellis Dep., ECF No. 80-12, at 57:24-58:4; Jenkins Dep., ECF No. 80-13, at 44:13-45:6.

**WITTKAMPER V. STIPANOVIC ET AL.**                              **3:23-CV-177**

### MEMORANDUM OPINION AND ORDER GRANTING
### MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]

Ellis and Jenkins Body Cameras, Sealed Exhs. 11 and 12 to Motion. EMS arrived at the scene approximately seven minutes after Wittkamper was handcuffed. Stepanovic Body Camera, Sealed Exh. 7 to Motion. Stely advised EMS that Wittkamper's last breath was 45 seconds prior to their arrival. Stely Dep., ECF No. 80-14, at 76:2-4. EMS performed CPR on Wittkamper but ultimately declared him dead at the scene. Id. at 79:2-4; Jenkins Dep., ECF No. 80-13, at 46:14-20. After Wittkamper was pronounced dead, Defendants searched the basement. Jenkins Dep., ECF No. 80-13, at 63:5-12. They did not locate any weapons. Ellis Dep., ECF No. 80-12, at 52:2-5.

The West Virginia Medical Examiner's Office ("WVMEO") listed Wittkamper's cause of death as morbid obesity with the use of an electronic restraint device as a contributing condition. See Sealed Exh. 10 to Motion. The WVMEO listed the manner of death as homicide. Id.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions

WITTKAMPER V. STIPANOVIC ET AL.                    3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

"When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586 (citations omitted). Rather, the court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). At its core, the summary-judgment process examines whether a trial is needed. See id. at 250.

**IV.  DISCUSSION**

For the reasons discussed below, the Court finds that Defendants are entitled to qualified immunity with respect to the federal claims, and the remaining claims fail as a matter of law.

WITTKAMPER V. STIPANOVIC ET AL.                          3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

### A.  Qualified Immunity

Qualified immunity can be afforded to government officials for discretionary acts taken in their official capacity.  The protection extends to "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  An officer, generally, is protected by qualified immunity if his "actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citation omitted). The test to determine whether an officer is entitled to qualified immunity is two-fold: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right, and (2) whether that right was clearly established such that a reasonable person would have known.  Siegert v. Gilley, 500 U.S. 226, 232 (1991).  The Court can address either prong first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."  Safar v. Tingle, 859 F.3d 241, 246 (4th Cir. 2017) (citation and internal quotations omitted).  "[A] right is only clearly established if it has a sufficiently clear foundation in then-existing precedent."  Thurston v. Frye, 99 F.4th 665, 678

8

WITTKAMPER V. STIPANOVIC ET AL.                                   3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

(4th Cir. 2024) (citations and internal quotation marks omitted). The "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau v. Haugen, 543 U.S. 194, 198-99 (2004) (citation omitted). As the Fourth Circuit has recently explained, the "crucial question is whether every reasonable officer would know this action in this situation was unlawful." Wells v. Fuentes, 126 F.4th 882, 890 (4th Cir. 2025) (citation omitted and emphasis modified).

To determine whether a right was clearly established, the Court looks to cases from the Supreme Court and the Fourth Circuit. See Thompson v. Commonwealth of Va., 878 F.3d 89, 109 (4th Cir. 2017) (citation omitted). In the absence of on-point, binding authority, courts should also consider whether "the right was clearly established based on general constitutional principles or a consensus of persuasive authority." Booker v. S.C. Dep't. of Corr., 855 F.3d 533, 543 (4th Cir. 2017). The Supreme Court has warned against "defining a right at too high a level of generality." Ray v. Roane, 948 F.3d 222, 229 (4th Cir. 2020) (citation omitted). It has "stressed the need to 'identify a case' or a 'body of relevant case law' where 'an officer acting under similar circumstances . . . was held to have violated the [Constitution]." Rambert v. City of Greenville, 107 F.4th 388,

9

WITTKAMPER V. STIPANOVIC ET AL.                           3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

402 (4th Cir. 2024) (citing District of Columbia v. Wesby, 583 U.S. 48, 64 (2018), and White v. Pauly, 580 U.S. 73, 79 (2017)). The right must be defined "in light of the specific context of the case, not as a broad general proposition." Younger v. Crowder, 79 F.4th 373, 385 (4th Cir. 2023) (citations omitted).

The Fourth Circuit applies a "split burden of proof for the qualified-immunity defense." Jones v. Solomon, 90 F.4th 198, 207 (4th Cir. 2024) (citation omitted). The plaintiff bears the burden of proving the first prong (that the conduct violated a constitutional right), and the officer bears the burden of proving the second prong (that the right was not clearly established). Id.

B.   **Excessive Force**

An officer's use of force is analyzed under the Fourth Amendment's "reasonableness" analysis. Graham v. Conner, 490 U.S. 386, 397 (1989). Force is not excessive if it is objectively reasonable under the circumstances facing the officer, without regard to his underlying intent. Id. The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396–97. "[T]he determination

WITTKAMPER V. STIPANOVIC ET AL.                              3:23-CV-177

### MEMORANDUM OPINION AND ORDER GRANTING
### MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]

whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made on the basis of information actually possessed by the officer at the critical time, . . . or that was then reasonably available to him, . . . and in light of any exigencies of time and circumstances that reasonably may have affected the officer's perceptions." Pritchett v. Alford, 973 F.2d 307, 312–13 (4th Cir. 1992) (citations omitted). "At the summary judgment stage, once we have viewed the evidence in the light most favorable to the nonmovant, the question of whether the officer's actions were reasonable is a question of pure law." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citation omitted).

The Court looks to the totality of the circumstances in assessing whether force was reasonable. See Barnes v. Felix, 605 U.S. 73, 79 (2025). The Supreme Court has identified certain factors to consider:

> (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.

Graham v. Connor, 490 U.S. 386, 396 (1989) (numbering added). The Court also considers "the extent of the plaintiff's injury" and "any effort made by the officer to temper or to limit the amount of force[.]" Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015).

11

**WITTKAMPER V. STIPANOVIC ET AL.**                                   **3:23-CV-177**

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

### 1.   Tasers

#### a.   Clearly Established Right (Prong Two)

The Court will first consider whether the firing of three taser shots at Wittkamper under the circumstances violated a clearly established right.   After reviewing the record and conducting its own research, the Court cannot find any case law establishing that the use of tasers in this situation violated a clearly established right.   Defendants were responding to a 911 call stating that Wittkamper had struck an elderly woman and was "high."   Wittkamper was completely naked, approximately 400 pounds, and acting erratically, and Defendants believed that he was under the influence.   Wittkamper charged toward Jenkins and moved toward Ellis, repeatedly refusing their commands to get on the ground.

Plaintiff cites certain cases to prove a clearly established right, but the cases are not factually comparable to this one. For instance, citing Yates v. Terry, he writes that "a nonviolent misdemeanant who is compliant, is not actively resisting arrest, and poses no threat to the safety of the officer or others should not be subjected to unnecessary, gratuitous, and disproportionate force."   817 F.3d 877, 888 (4th Cir. 2016) (quotation marks omitted).   Here, of course, Wittkamper's alleged misdemeanor was violent, and he was resisting arrest.   Objectively, he posed a

12

WITTKAMPER V. STIPANOVIC ET AL.                          3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

threat to the safety of the officers when he charged them, approached them, and ignored their commands.  Plaintiff also relies on Martin v. City of Broadview Heights, a nonbinding Sixth Circuit case, writing that "[a] reasonable officer should have known that subduing an unarmed, minimally dangerous, and mentally unstable individual with compressive body weight, head and body strikes, neck and shin restraints, and torso locks would violate that person's clearly established right to be free from excessive force."  712 F.3d 951, 963 (6th Cir. 2013).  Here, Defendants did not use body strikes, neck and shin restraints, or torso locks.  Finally, Plaintiff relies on Drummond v. City of Anaheim, a nonbinding Ninth Circuit case, writing, "The officers allegedly crushed [the plaintiff] against the ground by pressing their weight on his neck and torso, and continu[ed] to do so despite his repeated cries for air, and despite the fact that his hands were cuffed behind his back and he was offering no resistance.  Any reasonable officer should have known that such conduct constituted use of excessive force."  343 F.3d 1052, 1061 (9th Cir. 2003) (emphasis removed).  Again, here, Defendants did not place weight on Wittkamper's neck, and Wittkamper was not crying for air.  The situations are not comparable.

Because there is no clearly established right to be free from taser use by Defendants under these circumstances, the Court finds

13

**WITTKAMPER V. STIPANOVIC ET AL.**                                    3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

that Defendants are entitled to qualified immunity with respect to any claim of excessive force stemming from the deployment of their tasers.

### b.    Constitutional Violation (Prong One)

In addition, the Court, after assessing Defendants' actions, finds that Defendants' taser use was reasonable and did not violate the Fourth Amendment.  Looking at the first Graham factor (the severity of the crime at issue), Defendants were responding to a domestic battery call.  The caller reported that Wittkamper had struck Mrs. Cummings.  While domestic battery is a misdemeanor, the alleged crime here is a violent one.  Thus, the first Graham factor weighs in favor of Defendants.

Turning to the second Graham factor (whether Wittkamper posed an immediate threat), although Wittkamper was naked and unarmed, he weighed 400 pounds, charged Jenkins, and moved toward Ellis multiple times.  He refused to follow their commands to get on the ground.  Defendants observed that he appeared to be undergoing a mental health episode or was possibly under the influence. Objectively, given that Wittkamper repeatedly moved toward the officers, it would be reasonable to feel that he posed a threat. This weighs in favor of Defendants.

As for the third Graham factor (whether Wittkamper was actively resisting or attempting to flee), Wittkamper was

14

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

resisting Defendants.  He approached Defendants despite being told not to do so, and he ignored multiple commands.  The third factor weighs in favor of Defendants.  It is also important to note that, when viewing the body camera footage, the tasers did not appear to deter Wittkamper in real time when Defendants were deploying them.

In Rambert v. City of Greenville, the Fourth Circuit found that use of deadly force against an unarmed suspect, who ignored commands to get on the ground and rushed at an officer, was constitutionally reasonable.  107 F.4th 388.  Here, the taser use did not even rise to the use of deadly force.  Further, under Rambert, even if law enforcement thought that the suspect was undergoing mental health issues, the force used was still reasonable.  Id. at 401 ("[E]ven if Rambert were in mental distress, he was a potential breaking-and-entering suspect who charged at Johnson at full speed while yelling and ignoring Johnson's commands to get on the ground, ultimately reaching a proximity where he might have been able to grapple with Johnson and seize his gun.  And Rambert continued to advance aggressively even after being shot by Johnson.  Whether or not he was experiencing the effects of mental illness, Rambert posed an imminent threat to Johnson.").  For all of these reasons, Defendants' taser use was constitutionally reasonable, and

**WITTKAMPER V. STIPANOVIC ET AL.**                                    **3:23-CV-177**

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

Defendants are additionally entitled to qualified immunity for their taser use.

### 2.    Prone Position

### a.    Clearly Established Right (Prong Two)

Now, the Court will assess whether it was clearly established that it violated the Fourth Amendment to hold Wittkamper in the prone position as Defendants did here.  Again, Defendants were responding to a 911 call stating that Wittkamper had struck an elderly woman and was "high."  Wittkamper was approximately 400 pounds, completely naked, and acting erratically, and Defendants believed that he was under the influence.  Wittkamper charged toward Jenkins and moved toward Ellis, repeatedly refusing commands to get on the ground.  After Defendants finally took him to the ground, he was in the prone position for approximately 45 seconds while, due to his size, Defendants placed two sets of handcuffs on him.  Wittkamper was moving his legs.  Jenkins and Stely each had a hand on his back.  Ellis and Stipanovic each held down one of Wittkamper's legs.  Wittkamper continued to wiggle and move for a period of time.  He was then still for approximately 30 seconds.  After being still for approximately 30 seconds, which was approximately two minutes after the handcuffs were placed, Defendants noticed that Wittkamper had become unresponsive and

WITTKAMPER V. STIPANOVIC ET AL.                          3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

begun agonal breathing, so Defendants rolled him on his side into the recovery position.

Again, after reviewing the record and conducting its own research, the Court has been unable to locate any cases from the Fourth Circuit or Supreme Court that show that at the time of the incident, it was clearly established that keeping Wittkamper in the prone position as Defendants did was a violation of the Fourth Amendment.  To argue that Wittkamper had a right to be free from Defendants' force after the danger he posed had passed is "too general" a description to constitute a clearly established right. See Rambert, 107 F.4th at 402.  Accordingly, Defendants are entitled to qualified immunity with respect to any claim of excessive force stemming from placing Wittkamper in the prone position.

### b.    Constitutional Violation (Prong One)

In addition, the Court, after assessing Defendants' actions, finds that Defendants' placement of Wittkamper in the prone position for two minutes and 45 seconds, and their actions during that time, were reasonable and did not violate the Fourth Amendment.  After Defendants brought Wittkamper to the ground in the prone position, they worked to place two sets of handcuffs on him due to his size.  Approximately 45 seconds passed while they placed the handcuffs.  Wittkamper was moving his legs.  Jenkins

WITTKAMPER V. STIPANOVIC ET AL.                                    3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

and Stely each had a hand on his back.  Ellis and Stipanovic each held down one of Wittkamper's legs.  Wittkamper continued to wiggle and move for a period of time.  He was still for approximately 30 seconds, which was approximately two minutes after the handcuffs were placed, when Defendants rolled him on his side into the recovery position.  Given that Wittkamper had refused Defendants' commands up until that point, it would be reasonable for Defendants to believe that he was continuing to resist by moving.  Again, his entire body was still for only 30 seconds, when they moved him into the recovery position.  This all constitutes a reasonable use of force, and Defendants are additionally entitled to qualified immunity for this reason with respect to any claim of excessive force while Wittkamper was in the prone position.

**C.   Deliberate Indifference**

The Supreme Court has held that a pretrial detainee may prove a Fourteenth Amendment due process violation if he can show a "deliberate indifference to serious medical needs[.]"  Martin v. Gentile, 849 F.2d 863, 870-71 (4th Cir. 1988) (citations omitted).  "Under this standard, a plaintiff must prove: (1) that the detainee had an objectively serious medical need; and (2) that the official subjectively knew of the need and disregarded it."  Doe 4 by & through Lopez v. Shenandoah Valley Juv. Ctr. Comm'n, 985 F.3d 327, 340 (4th Cir. 2021) (citations omitted).  The Fourth Circuit has

**WITTKAMPER V. STIPANOVIC ET AL.**                                    3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

held that a law enforcement officer's calling for medical aid rather than rendering it himself does not violate a clearly established right.  King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) (finding officers entitled to qualified immunity on deliberate indifference claim).  Rather, "good-faith efforts to remedy the plaintiff's problems will prevent finding deliberate indifference, absent extraordinary circumstances." Koon v. North Carolina, 50 F.4th 398, 407 (4th Cir. 2022).

Here, after Wittkamper had been in the prone position for approximately 2 minutes and 45 seconds, and for only 2 minutes after the handcuffs were placed, Defendants noticed Wittkamper's agonal breathing and placed him on his side.  Defendants did not perform CPR.  EMS was already on its way, however, and Defendants expedited the EMS request when they turned Wittkamper on his side. The law is clear that Defendants had no Fourteenth Amendment obligation to provide CPR to Wittkamper.  It is sufficient that they contacted EMS and then called to expedite EMS.  EMS arrived only seven minutes after Wittkamper was handcuffed.  Simply put, it was not clearly established that Defendants were required to provide CPR to Wittkamper.  To the contrary, it is not a Fourteenth Amendment violation.  The Court, therefore, finds that Defendants are entitled to qualified immunity with respect to the deliberate indifference claim.

WITTKAMPER V. STIPANOVIC ET AL.                    3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

### D.   Bystander Liability

"The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th. Cir. 2002).  To succeed on a section 1983 claim for bystander liability, a plaintiff must show that an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204.  Here, as discussed, Defendants are entitled to qualified immunity with respect to the claims of excessive force and deliberate indifference.  The Court has found that Defendants' conduct was reasonable.  Accordingly, Plaintiff's claim of bystander liability must fail, and Defendants are entitled to summary judgment.

### E.   Battery

Under West Virginia law, employees of a political subdivision generally are immune from liability unless one of the following applies:

> (1)  His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2)  His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

20

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

---

> (3)  Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5(b).  The Supreme Court of Appeals of West Virginia has held that in the context of this statute, the terms "willful," "wanton," and "reckless" mean that

> the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.  It usually is accompanied by a conscious indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable.

Holsten v. Massey, 490 S.E.2d 864, 877 (W. Va. 1997) (citation omitted).  Here, after reviewing the body camera footage and all other evidence submitted, the Court finds that Defendants' actions were within the scope of their employment, and their actions were not taken with malicious purpose, in bad faith, or in a wanton or reckless manner.  Accordingly, they are entitled to immunity with respect to the battery claim.

In the alternative, the battery claim fails because it abated upon Wittkamper's death.  The West Virginia Code provides,

> In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, injuries to the person and not resulting in death, deceit or fraud, or any violations of § 46A-1-101 et. seq. of this code, also

21

**WITTKAMPER V. STIPANOVIC ET AL.**                               **3:23-CV-177**

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

---

survive; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

W. Va. Code § 55-7-8a(a). This Court has found that under W. Va. Code § 55-7-8a, "only injuries not resulting in death survive." Hoover v. Trent, No. 1:07cv47, 2008 WL 2992987, at *5 (N.D.W. Va. Aug. 1, 2008) (Keeley, J.) (finding that the plaintiff's battery claim abated). The United States District Court for the Southern District of West Virginia has also found that a battery claim abates upon death under W. Va. Code § 55-7-8a(a). Myers v. City of Charleston, No. 2:19-cv-00757, 2020 WL 4195005, at *12 (S.D.W. Va. July 21, 2020) (Johnston, J.) ("Plaintiffs' claim fails because the claim of assault and battery does not survive Adam's death[.]"); Spry v. West Virginia, No. 2:16-cv-01785, 2017 WL 1483370, at *9 (S.D.W. Va. Apr. 24, 2017) (Johnston, J.) ("The battery claim brought by Mr. Spry's estate cannot proceed because West Virginia claims for battery do not survive death."). Here too, Plaintiff's claim for battery abated upon Wittkamper's death.

Finally, in another alternative, the battery claim fails on the merits. In West Virginia, a person is liable for battery if (1) "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact"; and (2) "a harmful contact with

22

WITTKAMPER V. STIPANOVIC ET AL.                               3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

the person of the other directly or indirectly results." Crawford v. Daniels, No. 2:23-CV-00585, 2024 WL 1895105, at *7, (S.D.W. Va. Apr. 30, 2024) (quoting W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004)).   Generally, a law enforcement officer "engaged in an arrest is afforded a privilege that precludes a battery claim." Weigle v. Pifer, 139 F. Supp. 3d 760, 776 (S.D.W. Va. 2015).   The Court has already found that Defendants' actions were reasonable.   Accordingly, the battery claim fails on the merits.   For three different reasons, Defendants are entitled to summary judgment on the battery claim.

**F.   Outrage or Intentional Infliction of Emotional Distress**

First, for the same reasons discussed above with respect to the battery claim, Defendants are entitled to immunity for the claim of IIED under W. Va. Code § 29-12A-5(b).   In the alternative, the IIED claim fails because it abated upon Wittkamper's death. Again, as discussed, this Court has found that under W. Va. Code § 55-7-8a, "only injuries not resulting in death survive." Hoover, 2008 WL 2992987, at *5 (finding that the plaintiff's IIED claims abated under West Virginia law).   The Southern District has also found that an IIED claim abates upon death.   Myers, 2020 WL 4195005, at *13 (same).   Here too, the IIED claim abated upon Wittkamper's death, so the IIED claim fails as a matter of law.

WITTKAMPER V. STIPANOVIC ET AL.                              3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

Even if the IIED claim did not abate and even if Defendants were not immune, the IIED claim would fail on the merits.  To prevail on an IIED claim, a plaintiff must establish the following:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, <u>Travis v. Alcon Lab'ys, Inc.</u>, 504 S.E.2d 419 (W. Va. 1998).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  <u>Harless v. First Nat. Bank in Fairmont</u>, 289 S.E.2d 692, 705 (W. Va. 1982).  Here, the Court has already found that Defendants' conduct was reasonable.  Defendants' conduct simply does not rise to the high level required to prove a claim of IIED.  Accordingly, the IIED claim fails on the merits.  For three different reasons, Defendants are entitled to summary judgment with respect to the IIED claim.

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

---

### G.  Wrongful Death

Wrongful death claims are derivative by nature.  See Syl. Pt. 4, Davis v. Foley, 457 S.E.2d 532 (W. Va. 1995) ("The damages in a wrongful death action arise out of the death of the decedent[,] thereby making a wrongful death action a derivative claim.").  The West Virginia Code provides,

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.

W. Va. Code § 55-7-5.  "To maintain an action for wrongful death, a beneficiary must show two specific elements: that a person has died, and that the death was caused by a wrongful act, neglect or default."  Bradshaw v. Soulsby, 558 S.E.2d 681, 687 (W. Va. 2001).  Here, the Court has granted summary judgment with respect to all remaining claims.  The derivative wrongful death claim, therefore, must also fail.  Defendants are entitled to summary judgment.

### V.   CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

WITTKAMPER V. STIPANOVIC ET AL.                           3:23-CV-177

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [ECF NO. 80]**

- The motion for summary judgment is **GRANTED** in its entirety;

- This action is **DISMISSED** and **STRICKEN** from the Court's active docket;

- Any remaining pending motions shall be **TERMINATED** [ECF Nos. 110, 111, 112, 113]; and

- The Clerk is **DIRECTED** to enter a separate judgment order.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: June 22, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA